**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| JIANKANG BU,<br><br>Plaintiff,<br><br>v.<br><br>IDEAL POWER INC.,<br><br>Defendant. | No. 1:26-cv-01557-RP<br><br>Honorable Robert Pitman |

**DEFENDANT IDEAL POWER INC.'S**
**RESPONSE TO PLAINTIFF'S MOTION TO SEAL**
**THE FIRST AMENDED COMPLAINT AND ITS EXHIBITS**

## TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT .......... 1

ARGUMENT .......... 1

I. THE APPLICABLE LEGAL STANDARD FOR SEALING JUDICIAL RECORDS .......... 1

II. THE COURT SHOULD SEAL THE CONFIDENTIAL EXHIBITS .......... 2

III. THE REMAINING EXHIBITS SHOULD REMAIN PUBLICLY ACCESSIBLE .......... 7

IV. THE FIRST AMENDED COMPLAINT SHOULD REMAIN PUBLIC SUBJECT TO TARGETED REDACTIONS .......... 9

V. SPECIFIC RELIEF REQUESTED .......... 10

CONCLUSION .......... 11

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Binh Hoa Le v. Exeter Fin. Corp.*,
990 F.3d 410 (5th Cir. 2021) ....................1, 2, 3

*Doe v. Crawford*,
702 F. Supp. 3d 509 (S.D. Miss. 2023)....................2

*IFG Port Holdings, L.L.C. v. Lake Charles Harbor & Terminal Dist.*,
82 F.4th 402 (5th Cir. 2023) ....................2

*June Med. Servs., L.L.C. v. Phillips*,
22 F.4th 512 (5th Cir. 2022) ....................10

*Trans Tool, LLC v. All State Gear Inc.*,
2022 WL 608945 (W.D. Tex. March 1, 2022) ....................2, 7

*United States v. Ahsani*,
76 F.4th 441 (5th Cir. 2023) ....................2, 10

*Veasey v. Perry*,
769 F.3d 890 (5th Cir. 2014) ....................2, 10

**PRELIMINARY STATEMENT**

Defendant Ideal Power Inc. ("Ideal Power" or "Defendant") respectfully submits this Response to Plaintiff Jiankang Bu's ("Plaintiff") Motion to Restrict Public Access and Seal ECF Nos. 15 and 15-1 (ECF No. 17) (the "Motion"). Ideal Power does not oppose the Motion in its entirety. Rather, Ideal Power takes the position that only a subset of the exhibits filed as ECF No. 15-1 contain proprietary or competitively sensitive information warranting protection from public disclosure, while the remaining exhibits are already publicly available and do not meet the standard for sealing.

Specifically, Ideal Power respectfully requests that the Court seal Exhibits 2, 4, 6, 12, 13, 17, 18, 19, 20, 21, 22, and 26 (collectively, the "Confidential Exhibits"), which contain proprietary technical data, confidential internal communications, trade secret information, and/or competitively sensitive business strategies. Ideal Power further requests that the Court decline to seal the remaining exhibits—Exhibits 1, 3, 5, 7, 8, 9, 10, 11, 14, 15, 16, 23, 24, 25, 27, 28, 29, 30, 31, 32, and 33—as those documents were either already publicly available or their continued public availability does not implicate any cognizable interest in confidentiality.

Additionally, Ideal Power does not agree that the First Amended Complaint (ECF No. 15) should be sealed in its entirety. Instead, Ideal Power requests that the Court permit the First Amended Complaint to remain on the public docket subject to targeted redactions of specific passages that reproduce, quote, or summarize the contents of the Confidential Exhibits.

**ARGUMENT**

**I. The Applicable Legal Standard for Sealing Judicial Records**

Judicial records are presumptively open to the public. The Fifth Circuit has emphasized that judicial records are public records and that courts are duty-bound to protect the public's right of access. *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 416-17 (5th Cir. 2021). Although that

right is not absolute, a court must balance it against the interests favoring nondisclosure in light of the particular facts and circumstances. *Doe v. Crawford*, 702 F. Supp. 3d 509, 512 (S.D. Miss. 2023).

The party seeking secrecy bears the burden of overcoming the strong presumption of public access and must explain with particularity why sealing is necessary. *Trans Tool, LLC v. All State Gear Inc.*, 2022 WL 608945, at *6 (W.D. Tex. March 1, 2022). The presumption may be overcome by compelling countervailing interests, including a demonstrated need to protect trade secrets. *Binh Hoa Le*, 990 F.3d at 419, 421.

The Court must conduct a case-by-case, document-by-document, and line-by-line analysis. *IFG Port Holdings, L.L.C. v. Lake Charles Harbor & Terminal Dist.*, 82 F.4th 402, 410-11 (5th Cir. 2023). Any sealing must be "congruent to the need." *Trans Tool, LLC*, 2022 WL 608945, at *6. Redaction is often the appropriate, less restrictive means of protecting sensitive information when the remainder of a filing can remain public. *United States v. Ahsani*, 76 F.4th 441, 453-54 (5th Cir. 2023). Consistent with that principle, the Fifth Circuit has directed parties to redact limited references to sealed material rather than maintain an entire filing under seal when the filing contains only a small amount of sensitive information. *Veasey v. Perry*, 769 F.3d 890, 896 (5th Cir. 2014).

## II. The Court Should Seal The Confidential Exhibits

The Confidential Exhibits contain proprietary technical data, internal engineering analyses, proprietary technical assessments, confidential product development strategies, confidential corporate communications, and competitively sensitive business information. Ideal Power's request is limited to the thirteen exhibits for which the confidentiality interest justifies restricting public access. Ideal Power maintained these materials as confidential in the ordinary course of business. Employees and officers with access to proprietary technical information, including

Plaintiff during his tenure as Chief Technology Officer, were subject to non-disclosure obligations restricting the use and disclosure of confidential company information. Declaration of Timothy Burns, dated September 25, 2026, ("Burns Decl.") ¶ 3.

The Fifth Circuit recognizes that protecting trade secrets warrants sealing when the need for protection is established on a particularized basis. *Binh Hoa Le*, 990 F.3d at 419. Public disclosure of this information would cause concrete competitive harm by revealing trade secrets, internal engineering data, and private corporate communications to Ideal Power's competitors and the public at large.

The following descriptions provided by Tim Burns, Ideal Power's Chief Financial Officer, in his declaration identify the confidential information in each exhibit and the competitive harm that disclosure would cause.

<u>Exhibit 2: Third-Party Qualification/Reliability Test Data at 500 Hours</u>

Exhibit 2, which appears to have been prepared by Plaintiff, contains a summary readout table from third-party qualification and reliability testing of Ideal Power's B-TRAN semiconductor devices. This is proprietary testing data revealing device-by-device reliability results from confidential qualification testing. Disclosure of this information would reveal proprietary performance metrics, device failure rates, and qualification testing methodology to competitors, providing them with a significant and unearned competitive advantage in assessing the reliability of Ideal Power's core technology. Burns Decl. ¶ 4.

<u>Exhibit 4: Internal Failure Analysis Showing Die Failure</u>

Exhibit 4, again apparently prepared by Plaintiff, contains proprietary failure analysis images and an internal engineering assessment of B-TRAN device failures purportedly from July 2025 qualification testing. This appears to be a confidential internal engineering analysis revealing

the company's results regarding its core B-TRAN semiconductor technology. This information constitutes trade secret and proprietary technical know-how whose disclosure would reveal Ideal Power's internal quality assessment processes to competitors. Burns Decl. ¶ 5.

<u>Exhibit 6: Plaintiff's Weekly Progress Report to CEO (July 6, 2025)</u>

Exhibit 6 is a detailed internal weekly progress report from the then-Chief Technology Officer to the CEO, containing proprietary information about: SymCool V2 module development status, reliability qualification test results (including specific pass/fail rates), Gen2 device development, fabrication lot details with lot numbers and process specifications, driver development status, SiC BTRAN development timelines, patent filing strategies, and supplier-specific information identifying confidential commercial partners by name. This weekly CTO report is a quintessential confidential internal business document containing highly proprietary information about Ideal Power's technology development roadmap, specific engineering challenges, supplier relationships, and competitive strategies. Burns Decl. ¶ 6.

<u>Exhibit 12: Internal Email Chain Re SymCool IQ Product Development (September 22, 2023)</u>

Exhibit 12 is a confidential internal email chain between Ideal Power officers regarding SymCool IQ product development. It contains confidential internal deliberations about product design decisions, naming strategies, technical specifications (including voltage drop specifications), engineering objections to proposed designs, management philosophy discussions, and product development strategy. These are confidential internal communications reflecting the Company's proprietary deliberative process and product development decisions. Burns Decl. ¶ 7.

<u>Exhibit 13: Plaintiff's Weekly Progress Report to CEO (May 11, 2025)</u>

Exhibit 13 is another confidential weekly CTO progress report containing extensive proprietary information, including: SymCool Power Module V3 design optimization details,

packaging build plans with specific quantities and methods, competitive analysis data, specific design decisions regarding SymCool IQ (including architecture choices, NRE cost figures, and component specifications), driver development testing results, Gen2 B-TRAN development progress, SiC BTRAN development plans, and patent strategy decisions—including a decision to cancel patent filings with specific reasoning about detectability of infringement. This document is replete with trade secrets and competitively sensitive strategic information. Burns Decl. ¶ 8.

<u>Exhibit 17: Confidential Technical Assessment by Dr. Constantin Bulucea (November 2021)</u>

Exhibit 17 is a confidential technical assessment prepared by Dr. Constantin Bulucea, an IEEE Fellow and technology consultant to Ideal Power, titled "B-TRAN Technology: An Objective Assessment." The document is explicitly marked "Ideal Power – Confidential and Proprietary" on every page. It contains detailed proprietary analysis of B-TRAN device physics, 2D device simulations, device schematics, analysis of the physical limitations of high-voltage B-TRAN structures, and strategic recommendations for the company's technology development. This is a trade secret document containing confidential technical know-how and proprietary analysis of Ideal Power's core semiconductor technology that was prepared under an expectation of confidentiality. Burns Decl. ¶ 9.

<u>Exhibit 18: Final Report to U.S. Department of Energy (SBIR Award No. DE-SC0021715)</u>

Exhibit 18 is the final report submitted to the U.S. Department of Energy under SBIR Award No. DE-SC0021715, titled "BTRAN AC Solid State Circuit Breaker." The report is marked "Ideal Power Proprietary and Confidential." It contains proprietary TCAD simulation results, device design parameters including wafer thickness and resistivity optimization data, fabrication process details, module design specifications, thermal modeling data, impedance analysis results, and packaging concepts. This report contains extensive proprietary technical information about B-

TRAN device design, simulation methodology, and manufacturing processes that constitute trade secret information. Burns Decl. ¶ 10.

<u>Exhibit 19: Internal Test Data (2021)</u>

Exhibit 19, which appears to have been prepared by Plaintiff, contains proprietary internal test data from 2021 showing the forward voltage drop characteristics of Ideal Power's Technology A (original B-TRAN) semiconductor devices. This data was generated through confidential internal testing and shared only with the company's technology consultant under an expectation of confidentiality. Public disclosure of specific internal performance metrics would provide competitors with proprietary engineering data about Ideal Power's semiconductor device performance. Burns Decl. ¶ 11.

<u>Exhibit 20: Internal Test Data (February 2025)</u>

Exhibit 20, which was apparently prepared by Plaintiff, contains raw internal test data from February 2025 showing Technology A forward voltage drop measurements from an optimized fabrication process. This data was communicated via internal email between the plaintiff and a fabrication technician. This is proprietary semiconductor testing data from confidential internal development work. Burns Decl. ¶ 12.

<u>Exhibit 21: Report to Board of Directors on Technology B Results (September 15, 2022)</u>

Exhibit 21 is a confidential report to Ideal Power's Board of Directors presenting Technology B development results at the quarterly board meeting on September 15, 2022. This report contains proprietary information about the achievement of functional Technology B devices and the strategic direction of the company's core technology development, presented to the Board in its governance capacity. Burns Decl. ¶ 13.

Exhibit 22: Internal Technical Comparison of Two Generation of B-TRAN

Exhibit 22 is a proprietary internal technical comparison between two generations of Ideal Power's core B-TRAN technology, prepared by the plaintiff in his capacity as CTO. It contains proprietary analysis explaining the fundamental structural and operational differences between the two technology generations. This is confidential technical know-how that, if disclosed, would reveal to competitors the nature of Ideal Power's proprietary technology evolution. Burns Decl. ¶ 14.

Exhibit 26: Communication from Confidential Packaging Partner

Exhibit 26 is a communication from Ideal Power's commercial packaging partner confirming certain physical characteristics of the packaging process for B-TRAN devices. This document contains proprietary information about the packaging process for B-TRAN semiconductor devices. The specifics of manufacturing processes are competitively sensitive information maintained in confidence. Burns Decl. ¶ 15.

These descriptions provide the document-specific reasons supporting sealing. Unlike a generalized assertion that documents are "confidential," they identify the proprietary information contained in each exhibit and explain the competitive harm disclosure would cause. Because the Confidential Exhibits are permeated by the identified information, sealing those exhibits is congruent with the demonstrated need and overcomes the presumption of access. *Trans Tool, LLC*, 2024 WL 608945, at *6.

**III. The Remaining Exhibits Should Remain Publicly Accessible**

Plaintiff's Motion seeks to seal all thirty-three exhibits in their entirety. However, Exhibits 1, 3, 5, 7, 8, 9, 10, 11, 14, 15, 16, 23, 24, 25, 27, 28, 29, 30, 31, 32, and 33 are publicly available documents that do not contain proprietary or confidential information warranting protection from

public access. There is no cognizable basis for sealing most of the documents since they are already in the public domain.

These exhibits are:

- Exhibit 1: Q2 2025 Earnings Call Transcript (August 14, 2025)—publicly available on web platforms including Seeking Alpha.
- Exhibit 3: Ideal Power press release regarding qualification testing commencement (October 16, 2024)—a publicly disseminated press release.
- Exhibit 5: Q2 2026 Earnings Call Transcript (August 13, 2026)—publicly available.
- Exhibit 7: Announcement of $30 million stock offering—a public press release.
- Exhibit 8: Announcement of $1.2 million Navy NavSea project (August 10, 2020)—a public press release.
- Exhibit 9: SEC filing (Form 8-K/10-K) on Navy NavSea project and FY 2022 results—a public SEC filing.
- Exhibit 10: SymCool IQ product announcement (September 28, 2023)—a public press release.
- Exhibit 11: Multi-unit order announcement (December 2024)—a public press release.
- Exhibit 14: Q2 2019 Earnings Call Transcript—publicly available.
- Exhibit 15: FY 2019 financial results (March 11, 2020)—a public SEC filing/press release.
- Exhibit 16: B-TRAN announcement (October 27, 2021)—a public press release.
- Exhibit 23: B-TRAN white paper (April 2016)—a published, publicly available technical paper.
- Exhibit 24: $30 million offering closing announcement (May 19, 2026)—a public press release.
- Exhibit 25: Image of 52 B-TRAN devices—a publicly available image from a media article.
- Exhibit 27: SEC Form 8-K on CEO retirement (November 3, 2025)—a public SEC filing.

- Exhibit 28: Q3 2025 Earnings Call highlights—publicly available.
- Exhibit 29: Plaintiff's personal stock transaction records—personal records of Plaintiff, not Ideal Power proprietary information.
- Exhibit 30: September 19, 2022, announcement of Plaintiff's promotion—not confidential.
- Exhibit 31: Merck & Co. v. Reynolds, 559 U.S. 633 (2010)—a published Supreme Court opinion available on any legal database.
- Exhibit 32: VP of Engineering announcement (May 6, 2021)—a public press release.
- Exhibit 33: Letter from third-party investor regarding lost investment opportunity—a third-party communication, not Ideal Power's proprietary information.

Because these documents, except for Exhibits 29, 30 and 33, are already in the public domain—having been filed with the SEC, disseminated through press releases, published on financial news platforms, or otherwise publicly available—there is no basis for restricting public access to them. Sealing publicly available documents would not protect any cognizable interest in confidentiality and would impose an unnecessary and unwarranted restriction on the public's right of access to judicial records. Exhibits 29 and 33 do not contain Ideal Power's proprietary information.

## IV. The First Amended Complaint Should Remain Public Subject to Targeted Redactions

Plaintiff's Motion seeks to seal the entire First Amended Complaint (ECF No. 15) along with the exhibits. Ideal Power respectfully opposes wholesale sealing of the complaint itself. Sealing the complaint in its entirety would be inconsistent with the strong presumption of public access that attaches to court filings and pleadings. However, Ideal Power acknowledges that certain passages of the First Amended Complaint reproduce, quote, paraphrase, or summarize the substantive contents of the Confidential Exhibits. To the extent those passages reveal the same

proprietary and competitively sensitive information contained in the exhibits, Ideal Power seeks to seal, targeted redactions of those passages would be appropriate.

Targeted redactions are the proper means of protecting the identified confidential information without unnecessarily concealing the entire pleading. *June Med. Servs., L.L.C. v. Phillips*, 22 F.4th 512, 521-22 (5th Cir. 2022). Redaction is often a practical and appropriate means of safeguarding sensitive information while preserving public access to the remainder of a judicial filing. *Ahsani*, 76 F.4th at 453. When a filing contains only limited sensitive material, redacting those portions is preferable to sealing the filing in its entirety. *Veasey*, 769 F.3d at 896.

The targeted redactions Ideal Power requests are:

- Section III.1.2.a (containing information from Exhibit 2)
- The first bullet under Section III.1.3.1 (containing information from Exhibit 6)
- The last sentence of the second paragraph under Section III.2.3 (containing information from Exhibit 12)
- The third paragraph under Section III.2.3 (containing information from Exhibit 12)
- The fourth full paragraph on page 7, beginning "The same May 7, 2025 report . . . ." (containing information from Exhibit 13)
- The balance of the first paragraph under Section III.3.3 beginning with "The assessment reviewed . . . ." (containing information from Exhibit 17)
- The balance of the second paragraph under III.3.3 beginning with "All the quantitative . . . ." (containing information from Exhibit 18)
- The second sentence in the first full paragraph on page 11, beginning "The measured forward drop . . . ." (containing information from Exhibit 19)
- The phrase in the second full paragraph on page 11 beginning "forward voltage . . ." (containing information from Exhibit 20)

## V. Specific Relief Requested

Ideal Power therefore respectfully requests that the Court enter an order that:

1. Seals Exhibits 2, 4, 6, 12, 13, 17, 18, 19, 20, 21, 22, and 26 from ECF No. 15-1;

2. Permits the remaining exhibits (Exhibits 1, 3, 5, 7, 8, 9, 10, 11, 14, 15, 16, 23, 24, 25, 27, 28, 29, 30, 31, 32, and 33) to remain in the public record;

3. Permits the First Amended Complaint (ECF No. 15) to remain on the public docket, subject to the targeted redactions identified in Section IV above; and

4. Directs the Clerk to file the redacted version of the First Amended Complaint on the public docket.

## CONCLUSION

For the foregoing reasons, Defendant Ideal Power Inc. respectfully requests that the Court grant Plaintiff's Motion in part and deny it in part.

DATED: September 25, 2026

**ASHURST PERKINS COIE US LLP**

By: */s/ John R. Hardin*
John R. Hardin
john.hardin@ashurstperkins.com
ASHURST PERKINS COIE US LLP
2699 Howell Street, Suite 700
Dallas, TX 75204
Telephone: +1.214.965.7700

Matthew M. Riccardi
*Admitted Pro Hac Vice*
matthew.riccardi@ashurstperkins.com
ASHURST PERKINS COIE US LLP
1155 Avenue of the Americas, 22nd Floor
New York, New York 10036-2711
Telephone: +1.212.262.6900

*Attorneys for Ideal Power Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 25, 2026, I electronically filed the foregoing Defendant Ideal Power Inc.'s Response to Plaintiff's Motion to Seal the First Amended Complaint and its Exhibits Memorandum of Law in Support of its Motion to Dismiss with the Clerk of the Court using the CM/ ECF system and caused service of same via email to the below party of record:

Jiankang Bu (pro se)
45190 Key Circle
Temecula, CA 92592
Tel. 951-666-0355
Email: jiankang.bu@gmail.com

*/s/ John R. Hardin*
John R. Hardin