**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| JIANKANG BU,<br><br>Plaintiff,<br><br>v.<br><br>IDEAL POWER INC.,<br><br>Defendant. | No. 1:26-cv-01557-RP<br><br>Honorable Robert Pitman |

**DECLARATION OF TIMOTHY BURNS**
**IN SUPPORT OF DEFENDANT IDEAL POWER INC.'S**
**RESPONSE TO PLAINTIFF'S MOTION TO SEAL THE**
**FIRST AMENDED COMPLAINT AND ITS EXHIBITS**

I, Timothy Burns, declare as follows:

1. I am the Chief Financial Officer of Ideal Power Inc. ("Ideal Power" or "Defendant") in the above-captioned case. I submit this Declaration in support of Defendant's Response to Plaintiff's Motion to Seal the First Amended Complaint and Its Exhibits.

2. I am of sound mind, over the age of 21, have never been convicted of a felony, and am fully authorized and competent to make this declaration. This declaration is made upon my personal knowledge, except where otherwise noted. If called to testify to said statements, I could and would testify competently thereto. I have served as Chief Financial Officer of Ideal Power since October 2013. In my role as CFO, I am familiar with Ideal Power's confidential business information, proprietary technology, and the company's practices for protecting trade secrets and other sensitive information.

3. Ideal Power routinely requires individuals who may receive access to its proprietary information to execute non-disclosure agreements ("NDAs") as part of the

company's comprehensive practices for protecting its confidential information. These NDAs contain robust protections, including: a broad definition of "Confidential Information" covering trade secrets, technology, business plans, strategies, intellectual property, research, processes, methodologies, and know-how; a duty restricting the receiving party's use of Confidential Information solely to the limited purposes set forth in the agreement; a requirement that recipients disclose Confidential Information only to directors, officers, and employees who have a business-related need to know and who have been apprised of and agree to maintain its confidential nature; an obligation to institute and maintain procedures reasonably required to protect confidentiality and to apply at least the same level of care as the receiving party employs to protect its own confidential information of like nature; a requirement to return or suitably account for all tangible materials containing Confidential Information upon written request; and the availability of injunctive or equitable relief in the event of a breach, recognizing that unauthorized disclosure would cause irreparable injury not compensable by money damages alone. Plaintiff Jiankang Bu executed such an NDA with Ideal Power, dated March 30, 2021. The Confidential Exhibits identified below contain the types of proprietary information that Ideal Power protects through these agreements and internal practices.

4. Exhibit 2: Third-Party Qualification/Reliability Test Data at 500 Hours — Exhibit 2, which appears to have been prepared by Plaintiff, contains a summary readout table from third-party qualification and reliability testing of Ideal Power's B-TRAN semiconductor devices. This is proprietary testing data revealing device-by-device reliability results from confidential qualification testing. Disclosure of this information would reveal proprietary performance metrics, device failure rates, and qualification testing methodology to competitors, providing

them with a significant and unearned competitive advantage in assessing the reliability of Ideal Power's core technology.

5. Exhibit 4: Internal Failure Analysis Showing Die Failure — Exhibit 4, again apparently prepared by Plaintiff, contains proprietary failure analysis images and an internal engineering assessment of B-TRAN device failures purportedly from July 2025 qualification testing. This appears to be a confidential internal engineering analysis revealing the company's results regarding its core B-TRAN semiconductor technology. This information constitutes trade secret and proprietary technical know-how whose disclosure would reveal Ideal Power's internal quality assessment processes to competitors.

6. Exhibit 6: Plaintiff's Weekly Progress Report to CEO (July 6, 2025) — Exhibit 6 is a detailed internal weekly progress report from the then-Chief Technology Officer to the CEO, containing proprietary information about: SymCool V2 module development status, reliability qualification test results (including specific pass/fail rates), Gen2 device development, fabrication lot details with lot numbers and process specifications, driver development status, SiC BTRAN development timelines, patent filing strategies, and supplier-specific information identifying confidential commercial partners by name. This weekly CTO report is a quintessential confidential internal business document containing highly proprietary information about Ideal Power's technology development roadmap, specific engineering challenges, supplier relationships, and competitive strategies.

7. Exhibit 12: Internal Email Chain Re SymCool IQ Product Development (September 22, 2023) — Exhibit 12 is a confidential internal email chain between Ideal Power officers regarding SymCool IQ product development. It contains confidential internal deliberations about product design decisions, naming strategies, technical specifications

(including voltage drop specifications), engineering objections to proposed designs, management philosophy discussions, and product development strategy. These are confidential internal communications reflecting the Company's proprietary deliberative process and product development decisions.

8. Exhibit 13: Plaintiff's Weekly Progress Report to CEO (May 11, 2025) — Exhibit 13 is another confidential weekly CTO progress report containing extensive proprietary information, including: SymCool Power Module V3 design optimization details, packaging build plans with specific quantities and methods, competitive analysis data, specific design decisions regarding SymCool IQ (including architecture choices, NRE cost figures, and component specifications), driver development testing results, Gen2 B-TRAN development progress, SiC BTRAN development plans, and patent strategy decisions—including a decision to cancel patent filings with specific reasoning about detectability of infringement. This document is replete with trade secrets and competitively sensitive strategic information.

9. Exhibit 17: Confidential Technical Assessment by Dr. Constantin Bulucea (November 2021) — Exhibit 17 is a confidential technical assessment prepared by Dr. Constantin Bulucea, an IEEE Fellow and technology consultant to Ideal Power, titled 'B-TRAN Technology: An Objective Assessment.' The document is explicitly marked 'Ideal Power – Confidential and Proprietary' on every page. It contains detailed proprietary analysis of B-TRAN device physics, 2D device simulations, device schematics, analysis of the physical limitations of high-voltage B-TRAN structures, and strategic recommendations for the company's technology development. This is a trade secret document containing confidential technical know-how and proprietary analysis of Ideal Power's core semiconductor technology that was prepared under an expectation of confidentiality.

10. Exhibit 18: Final Report to U.S. Department of Energy (SBIR Award No. DE-SC0021715) — Exhibit 18 is the final report submitted to the U.S. Department of Energy under SBIR Award No. DE-SC0021715, titled 'BTRAN AC Solid State Circuit Breaker.' The report is marked 'Ideal Power Proprietary and Confidential.' It contains proprietary TCAD simulation results, device design parameters including wafer thickness and resistivity optimization data, fabrication process details, module design specifications, thermal modeling data, impedance analysis results, and packaging concepts. This report contains extensive proprietary technical information about B-TRAN device design, simulation methodology, and manufacturing processes that constitute trade secret information.

11. Exhibit 19: Internal Test Data (2021) — Exhibit 19, which appears to have been prepared by Plaintiff, contains proprietary internal test data from 2021 showing the forward voltage drop characteristics of Ideal Power's Technology A (original B-TRAN) semiconductor devices. This data was generated through confidential internal testing and shared only with the company's technology consultant under an expectation of confidentiality. Public disclosure of specific internal performance metrics would provide competitors with proprietary engineering data about Ideal Power's semiconductor device performance.

12. Exhibit 20: Internal Test Data (February 2025) — Exhibit 20, which was apparently prepared by Plaintiff, contains raw internal test data from February 2025 showing Technology A forward voltage drop measurements from an optimized fabrication process. This data was communicated via internal email between the plaintiff and a fabrication technician. This is proprietary semiconductor testing data from confidential internal development work.

13. Exhibit 21: Report to Board of Directors on Technology B Results (September 15, 2022) — Exhibit 21 is a confidential report to Ideal Power's Board of Directors presenting

Technology B development results at the quarterly board meeting on September 15, 2022. This report contains proprietary information about the achievement of functional Technology B devices and the strategic direction of the company's core technology development, presented to the Board in its governance capacity.

14. Exhibit 22: Internal Technical Comparison of Two Generations of B-TRAN — Exhibit 22 is a proprietary internal technical comparison between two generations of Ideal Power's core B-TRAN technology, prepared by the plaintiff in his capacity as CTO. It contains proprietary analysis explaining the fundamental structural and operational differences between the two technology generations. This is confidential technical know-how that, if disclosed, would reveal to competitors the nature of Ideal Power's proprietary technology evolution.

15. Exhibit 26: Communication from Confidential Packaging Partner — Exhibit 26 is a communication from Ideal Power's commercial packaging partner confirming certain physical characteristics of the packaging process for B-TRAN devices. This document contains proprietary information about the packaging process for B-TRAN semiconductor devices. The specifics of manufacturing processes are competitively sensitive information maintained in confidence.

16. Each of the Confidential Exhibits identified above contains proprietary technical data, confidential internal communications, trade secret information, and/or competitively sensitive business strategies that Ideal Power has maintained as confidential in the ordinary course of business. Public disclosure of this information would cause concrete competitive harm to Ideal Power by revealing its trade secrets, internal engineering data, and private corporate communications to its competitors and the public at large.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 25, 2026, in Austin, Texas, by:

Timothy Burns
Chief Financial Officer Ideal Power Inc.